UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SQUARE ONE CHOICES INC.,

                     Plaintiff,

- against -

DITEC SOLUTIONS LLC,

                     Defendant.

**MEMORANDUM**
**OPINION & ORDER**

22 Civ. 7680 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Square One Choices Inc. brings this action against Defendant Ditec Solutions LLC, asserting claims for patent infringement.  (Cmplt. (Dkt. No. 1))  Defendant has moved (1) to dismiss the Complaint for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, to transfer the case to the District of Utah; and (2) for an award of attorneys' fees.  (Mot. (Dkt. No. 25); Def. Reply Br. (Dkt. No. 27) at 4)[1]  Plaintiff seeks venue-related discovery.  (Pltf. Opp. (Dkt. No. 28) at 18-19)  For the reasons stated below, Defendant's motion to transfer will be granted; Plaintiff's motion for venue-related discovery will be denied; and Defendant's motion for an award of attorneys' fees will be denied.

---

[1]  The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

Square One is a New York corporation.  Ditec is a Wyoming LLC with its

principal place of business in Utah.  (Cmplt. (Dkt. No. 1) ¶¶ 2-3; Ditec Articles of Organization

and Certificate of Organization (Dkt. No. 26-2))  Jurisdiction is premised on federal question

jurisdiction and patent jurisdiction, under 28 U.S.C. §§ 1331 and 1338(a), respectively.  (Cmplt.

(Dkt. No. 1) ¶ 5)

## I.     FACTS[2]

On December 28, 2017, Kazimierz Bigus – Square One's owner, director, and

chief executive officer – filed a patent application for a "Device and Method for the Creation of

2D and 3D Objects by Using a 3d Drawing Pen," Application Number 15/857,500.  On

September 21, 2021, the U.S. Patent and Trademark Office issued Patent No. 11,123,901 B2 (the

"'901 Patent") for such a device.  Bigus subsequently assigned the '901 Patent to Square One.

(Cmplt. (Dkt. No. 1) ¶¶ 10, 17-18; '901 Patent (Dkt. No. 1-4) at 1; Bigus Decl. (Dkt. No. 28-1)

¶ 1)  Square One alleges that "[u]pon information and belief, Defendant has and continues to

directly infringe one or more claims of the '901 patent by selling [a] Design Mat Kit [under the

brand name 'MYNT3D'] as part of the Defendant's line of products (the 'Accused Products') via

Amazon marketplace, [and] its own website located at

https://www.mynt3d.com/collections/all/."  (Id. ¶ 19)

---

[2]  The Court's factual account is drawn from the Complaint and the parties' submissions.  See
Brennen v. Phyto-Riker Pharm., Ltd., 2002 WL 1349742, at *1 n.2 (S.D.N.Y. June 20, 2002)
("Courts may consider materials outside the pleadings when deciding a motion to dismiss for
improper venue under Rule 12(b)(3). . . .") (citing New Moon Shipping Co., Ltd. v. Man B & W
Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)).  In considering a motion to dismiss or transfer for
improper venue, "[t]he Court 'must take all allegations in the complaint as true, unless
contradicted by the defendants' affidavits.'"  Rankel v. Kabateck, 2013 WL 7161687, at *2
(S.D.N.Y. Dec. 9, 2013) (quoting U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.,
162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

According to the Complaint, venue is proper in this District because

[u]pon information and belief, Defendant maintains [a] place of business at 68 3rd Street, #110, Brooklyn, New York, 11231 as evidenced by Defendant's Amazon storefront page, accessed on August 31, 2022 . . . .  Similarly, Bill of [Lading] Import Records [for shipments to Ditec arriving on June 27, 2020, July 10, 2020, August 19, 2020, and February 15, 2021], list Defendant's address as 68 3rd Street, #110, Brooklyn, New York, 11231. . . .

Defendant was registered with the New York's Department of State Division of Corporations as actively conducting business in the State of New York until about August 4, 2022. . . . Upon learning about a potential litigation in this District and to avoid this action, Defendant . . . changed its status to inactive with . . . New York's Department of State Division of Corporations on or about August 4, 2022.

(Id. ¶¶ 7-8 and Exs. A-C (Dkt. Nos. 1-1 through -3))  Plaintiff also notes that "Ryley Lyon, the founder and Chief Executive Officer of Ditec . . ., currently lists Brooklyn, New York, as his address, on his LinkedIn page."  (Gureff Decl. (Dkt. No. 28-2) ¶ 3; see Lyon LinkedIn (Dkt. No. 28-2) at 4)

Plaintiff does not allege any connection between Defendant and the counties that make up the Southern District of New York:  New York (Manhattan), the Bronx, Westchester, Rockland, Putnam, Orange, Dutchess, and Sullivan.  See 28 U.S.C. § 112(b).

In a December 26, 2022 declaration, Lyon – Ditec's principal – states that

Ditec was formed as a Wyoming limited liability company in June 2017.

From that time until August 2020, Ditec conducted business at a location it was renting in New York.

On August 21, 2020, Ditec's lease ended.

However, Ditec moved all of its business operations and employees to Utah before that date.

From August 2020 to the present, Ditec maintained just one physical location, at 159 West Broadway, Suite 200, Salt Lake City, Utah 84101.

Ditec has not had any physical presence in New York since the filing of the Complaint [on September 8, 2022] – and actually, it has not had a presence in

3

New York since more than a year before the asserted '901 Patent issued [on
September 21, 2021].

Since moving, Ditec confirmed in various ways that it had moved out of New
York.

First, Ditec filed New York tax returns in 2021 for the 2020 year that indicated
near the top of the document that this is the "Final Return" it would be filing in
New York. This was due to Ditec's move to Utah in 2020.

Further, at the time of the filing of the Complaint [on September 8, 2022], Ditec
was listed as an "inactive" entity in New York.

As shown in Ditec's filing, its new address was in Salt Lake City, Utah.

Additionally, the Bills of Lading relied upon by Square One Choices Inc.
("Square One") in its Complaint were not prepared by Ditec (and one actually
refers to the wrong company name) and they are inaccurate to the extent they
represent that any shipments were made to the New York address.

. . . .

None of these shipments were delivered to Ditec's former New York address.

Ditec routinely used the New York address as consignee while the business was
operating in New York, but this never represented the final destination of the
cargo, and no sea freight was ever delivered there.

Any Bill of Lading listing the New York address as consignee after July 2020 was
merely an error by the supplier or shipping agent that prepared the document.

In fact, the New York address is an office building with no loading dock and
[cannot] receive containerized freight.

Though Ditec listed its New York address on its Amazon seller's page after the
lawsuit was filed, this was inadvertent. Ditec immediately changed this to its
Utah address upon learning of the issue.

(Lyon Decl. (Dkt. No. 26-1) ¶¶ 4-14, 16-20)

In a February 3, 2023 supplemental declaration, Lyon adds that

[a]ll of Ditec's shipments are handled by third-party logistics [companies] – Ditec
does not employ warehouse workers or handle shipments.

None of Ditec's third-party logistics [partners] warehouse Ditec's products in
New York.

> Ditec has located a receipt of the delivery order bearing Bill of Lading Master No. ZIMUHKG83139852 [(see Bill of Lading, Cmplt., Ex. B (Dkt. No. 1-2) at 1)] that shows these products were delivered to a third-party logistics warehouse in Cranbury, NJ.
>
> The third-party logistics warehouse then shipped the product to Ditec's customers.

(Supp. Lyon Decl. (Dkt. No. 27-1) ¶¶ 7-10)

Ditec has also submitted its 2020 New York S Corporation Franchise Tax Return. A box located in the upper-left corner of the return is checked off, indicating that the return constitutes Ditec's "final return."  (2020 Ditec N.Y. Franchise Tax Return (Dkt. No. 26-4) at 2) Ditec has also submitted a December 5, 2022 screenshot of its updated Amazon seller page, which shows a Salt Lake City, Utah address.  (Dec. 5, 2022 Ditec Amazon Seller Page (Dkt. No. 26-5) at 3)  Finally, Ditec has submitted the receipt for the shipment bearing Bill of Lading Master No. ZIMUHKG83139852, indicating that the shipment was received in Cranbury, New Jersey on February 23, 2021.[3]  (Ditec Receipt (Dkt. No. 27-2) at 2).[4]

## II.   PROCEDURAL HISTORY

The Complaint was filed on September 8, 2022, and asserts claims against Ditec for direct and induced infringement of the '901 Patent.  (Cmplt. (Dkt. No. 1))

---

[3]  The corresponding bill of lading attached as Exhibit B to the Complaint lists an arrival date of February 15, 2021.  (Dkt. No. 1-2 at 1)  The parties' briefing does not address this discrepancy.

[4]  Ditec has submitted a July 21, 2020 email from Michael Braun – an Enterprise Sales Manager for "Bond Collective" – to Lyon, which appears to address the expiration of a lease.  (July 21, 2020 Braun Email (Dkt. No. 26-3))  In its motion papers, Ditec cites the email as evidence that "Ditec moved all of its business operations and employees to Utah before [August 21, 2020]." (Def. Br. (Dkt. No. 26) at 7)  It is not apparent from the email that it relates to Ditec's office space in Brooklyn, however, nor does the email state whether or when Ditec "moved all of its business operations and employees" from that location.  Given the lack of clarity, and Ditec's failure to submit an affidavit or declaration providing context for the email, it will be disregarded.

Ditec moved to dismiss for improper venue, or in the alternative to transfer, on February 6, 2023.  (Def. Mot. (Dkt. No. 25); Def. Reply Br. (Dkt. No. 27) at 12 (stating that "Ditec is amenable to the case being transferred to Utah if the Court prefers that over the requested dismissal"))

In response to Ditec's motion to dismiss, Square One moved for venue-related discovery.  (Pltf. Opp. (Dkt. No. 28) at 18-19)

## DISCUSSION

I.   **WHETHER VENUE IS PROPER IN THIS DISTRICT**

    A.   **Legal Standards**

        1.   **Rule 12(b)(3) Standard**

"Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue." Person v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  In considering such a motion, "[t]he Court 'must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits.'" Rankel, 2013 WL 7161687, at *2 (quoting McKeown, 162 F. Supp. 2d at 183).  Where, as here, no evidentiary hearing has been conducted, the Court may "'rely on pleadings and affidavits, [and] the plaintiff need only make a prima facie showing of [venue].'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)); see Brennen, 2002 WL 1349742, at *1 n.2.

        2.   **Venue in Patent Infringement Cases**

Venue in patent infringement cases involving U.S. entities and individuals is governed by 28 U.S.C. § 1400(b), the patent venue statute. NetSoc, LLC v. Chegg Inc., 2019 WL 4857340, at *2 (S.D.N.Y. Oct. 2, 2019) (citing TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258, 261 (2017); In re ZTE (USA) Inc., 890 F.3d 1008, 1113 (Fed. Cir.

2018)).  Section 1400(b) provides that a "civil action for patent infringement may be brought in [(1)] the judicial district where the defendant resides, or [(2)] where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

For purposes of Section 1400(b), "a domestic corporation 'resides' only in its State of incorporation."  TC Heartland LLC, 581 U.S. at 262.

As to Section 1400(b)'s "regular and established place of business" prong, courts apply a three-part test:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  In re Cray, Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017).  "If any statutory requirement is not satisfied, venue is improper under § 1400(b)."  Id.

To satisfy the "physical place" requirement, a plaintiff must allege a "a physical, geographical location in the district" at which the defendant carries out its business.  Id. at 1362. For such a place to be "regular and established," it must be operated "'in a steady, uniform, orderly, and methodical manner,' and it must be 'settled certainly, or fixed permanently.'" NetSoc, 2019 WL 4857340, at *3 (quoting In re Cray, 871 F.3d at 1362).  In determining whether the place is "of the defendant," courts consider factors such as "(1) whether the defendant owns, leases, or otherwise exercises control over the premises; (2) 'whether the defendant conditioned employment on an employee's continued residence in the district'; (3) whether the defendant stored inventory there to be sold or distributed from that place; (4) whether the defendant made outward representations that the physical location was its place of business; and (5) how the alleged place of business in the district compares to other places of business of the defendant in other venues."  Zaxcom, Inc. v. Lectrosonics, Inc., 2019 WL

418860, at *5 (E.D.N.Y. Feb. 1, 2019) (quoting In re Cray, 871 F.3d at 1363-64); see also NetSoc, 2019 WL 4857340, at *3.

"In applying the patent venue statute, the Court is mindful that it 'should not be liberally construed in favor of venue.'" NetSoc, LLC, 2019 WL 4857340, at *2 (quoting In re ZTE (USA) Inc., 890 F.3d at 1014); see also Peerless Network, Inc. v. Blitz Telecom Consulting, LLC, 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018) (noting that "patent venue is narrower than general venue")).

### 3.    Venue-Related Discovery

In determining whether venue-related discovery should be granted in a patent infringement action, courts in this Circuit apply the same standard applicable to requests for jurisdictional discovery. NetSoc, LLC, 2019 WL 4857340, at *4 ("[T]he Court will apply Second Circuit law concerning jurisdictional discovery to [a] request for venue discovery."); Berall v. Teleflex Med. Inc., 2022 WL 2666070, at *5 (S.D.N.Y. July 11, 2022) (applying jurisdictional discovery standard); TrackThings LLC v. NETGEAR, Inc., 2022 WL 2829906, at *12 (S.D.N.Y. July 20, 2022) (same).

A "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant," and "may carry this burden 'by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a "prima facie showing" of jurisdiction.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)). "A plaintiff can make this showing through [its] 'own affidavits and supporting materials . . . containing an 'averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant.'" Id. (quoting first Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981), and second Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). Where a plaintiff does "not establish a

prima facie case that the district court ha[s] jurisdiction over [the defendant], [however,] the district court [does] not err in denying [jurisdictional] discovery." Jazini, 148 F.3d at 186.  A prima facie case requires non-conclusory "'legally sufficient [factual] allegations of jurisdiction.'" Id. at 185-86 (quoting Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  Courts in this District routinely deny venue-related discovery in patent infringement actions where a plaintiff has not proffered "fact-specific allegations or evidence that could support a finding that venue is proper." NetSoc, LLC, 2019 WL 4857340, at *4; see also Berall, 2022 WL 2666070, at *5; TrackThings, 2022 WL 2829906, at *12.

**B.**     **Analysis**

The parties do not dispute that Ditec is incorporated in Wyoming (Def. Br. (Dkt. No. 26) at 10; Pltf. Opp. (Dkt. No. 28) at 10), and thus resides, for purposes of the patent venue statute, 28 U.S.C. § 1400(b), in Wyoming.  TC Heartland LLC, 581 U.S. at 262.  Moreover, Defendant does not dispute – for purposes of this Court's venue determination – that Plaintiff has properly pled the commission of infringing acts within this District.  Accordingly, the venue determination turns on whether Plaintiff has proffered facts demonstrating that Ditec "has a regular and established place of business" in the Southern District of New York.  28 U.S.C. § 1400(b).

**1.**     **Relevant Time Frame**

As an initial matter, this Court must determine the relevant time frame for determining whether Ditec "has a regular and established place of business" in this District.  28 U.S.C. § 1400(b).  Ditec contends that venue is to be determined based on the facts as of the Complaint's filing date of September 8, 2022 (the "filing date approach").  Square One, by contrast, contends that venue is to be determined based on the facts as of the time the claim

accrued, provided that the complaint is filed within a reasonable time of accrual (the "accrual

date approach"). (Def. Br. (Dkt. No. 26) at 13; Pltf. Opp. (Dkt. No. 28) at 12-13)

While the Federal Circuit has acknowledged that courts have split on this issue, it

has not resolved the dispute. See In re Google LLC, 949 F.3d 1338, 1340 n.1 (Fed. Cir. 2020)

(noting that "regional circuits appear to be split on the exact timing for determining venue").

In two recent decisions in this District, courts adopted the filing date approach.

The court in TrackThings LLC v. NETGEAR, Inc., No. 21 CIV. 5440 (KPF), 2022 WL 2829906

(S.D.N.Y. July 20, 2022), reasoned as follows:

> This Court joins the line of cases holding that venue for purposes of the patent
> venue statute is to be decided at the time the case is brought.
>
> Beginning with the text of the patent venue statute, Section 1400(b) provides:
> "Any civil action for patent infringement may be brought in the judicial district
> where the defendant resides, or where the defendant has committed acts of
> infringement and has a regular and established place of business." 28 U.S.C. §
> 1400(b). The language of the statute contains several indicia that suggest its
> temporal focus is the time at which a suit is filed. Importantly, the statute refers
> to where a civil action "may be brought," and the act of "bringing" a civil action
> refers to the filing of a complaint. See NetSoc, LLC, 2019 WL 4857340, at
> *2; accord Pers. Audio, LLC v. Google, Inc., 280 F. Supp. 3d 922, 930 (E.D. Tex.
> 2017). Further, the statute speaks in the present tense by using the term "resides"
> and the phrase "has a regular and established place of business." Congress's
> decision to phrase the statute in the present tense connotes an analytical scope for
> patent venue contemporaneous with the initiation of a patent infringement
> action. See Pers. Audio, LLC, 280 F. Supp. at 930 ("Congress could have used
> 'has had a regular and established place of business' but chose not to do so.").
>
> Moreover, assessing venue at the time of filing is in keeping with the Federal
> Circuit's directive that when construing venue under Section 1400(b), "the
> analysis must be closely tied to the language of the statute." In re Cray, Inc., 871
> F.3d at 1362. This reading of patent venue timing under Section 1400(b) is
> supported by a "chain of strict interpretations of [Section] 1400(b) and its
> predecessor statutes by the Supreme Court." Pers. Audio, LLC, 280 F. Supp. at
> 931; see also TC Heartland, 137 S. Ct. at 1515 (holding that residence under
> Section 1400(b) refers only to the state of incorporation); Stonite Products Co.,
> 315 U.S. at 563 (holding that Section 1400(b)'s predecessor was the exclusive
> provision controlling venue in patent infringement proceedings). Further, a time-
> of-filing rule is consistent with Section 1400(b)'s "intentional narrowness,"
> reinforced by the Federal Circuit. In re ZTE (USA) Inc., 890 F.3d at 1014.

Id. at *5-6 (further citations omitted).

In NetSoc, LLC v. Chegg Inc., No. 18-CV-10262 (RA), 2019 WL 4857340

(S.D.N.Y. Oct. 2, 2019), the court reached the same conclusion:

> The Court has not identified any Federal Circuit decision addressing the point in time in which venue is to be analyzed under § 1400(b).  But other courts have persuasively concluded that venue under § 1400(b) should be analyzed, as under 28 U.S.C. § 1391, at the time the case is brought.  In Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd., for example, the court rejected the argument that venue became proper in the Central District of California under § 1400(b) upon the defendant's merger there with another company, because the merger had occurred after the complaint was filed.  No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129, at *6 (C.D. Cal. June 22, 2018).  The court reasoned that, because § 1400(b) refers to where a civil action "may be brought," venue should be assessed based on the facts existing at the time the plaintiff commences the action. This Court agrees.  As another court has noted, "bringing" a civil action refers to the act of filing a complaint, and analyzing venue at that time comports with the Federal Circuit's reminder that venue determinations "must be closely tied to the language of the statue."  In re Cray Inc., 871 F.3d 1355, 1360 (Fed. Cir. 2017); Pers. Audio, LLC v. Google, Inc., 280 F. Supp. 3d 922, 930 (E.D. Tex. 2017).  Whether [Defendant] Quora has a "regular and established place of business" in this district will therefore be assessed as of December 12, 2018, when [Plaintiff] NetSoc brought its case against Quora.

Id. at *2 (footnote and further citations omitted; emphasis in original).  Accord Uni-Sys., LLC v.

United States Tennis Ass'n Nat'l Tennis Ctr. Inc., 2020 WL 1694490, at *7 (E.D.N.Y. Apr. 7,

2020) ("[V]enue is determined based on the facts existing at the time the plaintiff commences an

action.").

By contrast, in San Shoe Trading Corp. v. Converse Inc., 649 F. Supp. 341

(S.D.N.Y. 1986), a court in this District adopted the accrual date approach:

> Plaintiff argues that under the patent statute venue should be determined not when the complaint is filed, but when the claim of infringement accrued.  This is an issue that apparently has not been addressed by any court in this circuit.  Only two courts in any circuit have ruled on when venue is determined under § 1400(b). Both courts held that the pivotal time was that of accrual.  Welch Scientific Co. v. Human Engineering Institute, Inc., 416 F.2d 32, 35 (7th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); Datascope Corp. v. SMEC, Inc., 561 F.Supp. 787, 790 (D.N.J. 1983), aff'd in relevant part, 776 F.2d 320 (Fed. Cir. 1985).

In <u>Welch</u>, the defendant was an Ohio corporation with a "regular and established place of business" in Illinois when the alleged infringement occurred. Thirty-seven days before plaintiff filed suit, however, defendant closed its Illinois operations, and on this ground resisted venue in the Northern District of Illinois. The Seventh Circuit held that "[v]enue is properly lodged in the district if the defendant had a regular and established place of business at the time the cause of action accrued and suit is filed within a reasonable time thereafter." <u>Welch</u>, 416 F.2d at 35. The court explained that "a defendant cannot establish a business in a particular judicial district and then abandon or sell it without remaining amenable to suit for venue purposes in that district for a reasonable time." <u>Id.</u> at 36.

The court in <u>Datascope</u> found this logic convincing. Both courts rejected defendants' arguments that to hold venue proper would violate the United States Supreme Court's admonition in <u>Fourco Glass</u> that § 1400(b) was to be given a restrictive reading. <u>Welch</u>, 416 F.2d at 35; <u>Datascope</u>, 561 F. Supp. at 789.

Converse acknowledges, of course, the weight of authority against it, but points to decisions under the general venue statute, 28 U.S.C § 1391, that have held that venue is determined at the time of filing. Converse is correct that there is a split in authority over when venue is determined under § 1391. A majority of courts, however, have looked to accrual, although the only reported case in this district, a decision now over thirty years old, took the minority position. <u>Satterfield v. Lehigh Valley Railroad Co.</u>, 128 F. Supp. 669, 670 (S.D.N.Y. 1955) (Palmieri, J.).

The majority position is based on the very reasoning articulated in <u>Welch</u>: once a defendant has availed himself of the benefits of doing business in a district, he should not be able to retreat to his home forum simply by closing up shop before plaintiff has an opportunity to file a complaint. If anything, that reasoning is more compelling under the patent venue statute than under § 1391. Unlike the patent venue statute, § 1391 provides for venue where a claim arises. 15 C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u>, § 3811 at 116 (1976). With this alternate source of venue there is much less danger that a defendant will be able to escape venue in a foreign district by pulling up its stakes before plaintiff has a chance to file suit. That is why courts and commentators that support a filing standard under § 1391 might well support an accrual standard under § 1400(b). For example, in its papers Converse cites <u>Federal Practice and Procedure</u> as supporting a filing standard. But, while Professors Wright, Miller, and Cooper do support a filing standard under § 1391, they do so precisely because that statute provides for venue where a claim arises. <u>Id.</u> § 3811 at 116. In the absence of any such alternate source of venue (<u>i.e.</u>, as under § 1400(b)), they find "much practical wisdom" in an accrual standard. <u>Id.</u> at 115.

. . . .

The most compelling argument Converse offers in support of the filing standard is based on the text of § 1400(b) itself. Converse notes correctly that the statute

provides for venue where the defendant "<u>has</u> a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). Converse urges that the use of the present tense "has," especially when juxtaposed with the statute's provision regarding venue "where the defendant <u>has committed</u> acts of infringement," 28 U.S.C. § 1400(b) (emphasis added), is indicative of Congress's intent to endorse the filing standard.

While this argument has some obvious appeal, the court believes that Converse has read too much into the text of the law. Absent further support in the legislative history, the court is unconvinced that Congress chose its words with the question we are faced with in mind. Instead, the court finds that Congress's objectives would better be served by holding that venue is determined at the time the claim accrues.

<u>Id.</u> at 343-45 (footnotes and further citations omitted).[5]

This Court agrees with the analysis in <u>TrackThings</u> and <u>NetSoc</u>, and will adopt the filing date approach for essentially the same reasons set forth in those cases. The Federal Circuit has "stress[ed] that the analysis [of venue] must be closely tied to the language of the [patent venue] statute." <u>In re Cray</u>, 871 F.3d at 1362. Section 1400(b)'s use of the present tense – "where the defendant <u>resides</u>" and "where the defendant <u>has</u> a regular and established place of business" (emphases added) – indicates that courts should look to the facts extant at the time an action is filed in making the venue determination. Similarly, the phrase "may be brought" implies that the venue determination is intrinsically linked to the filing of a complaint. In sum, the text of the patent venue statute supports the filing date approach.

The filing date approach is also consistent with the restrictive interpretation that the Supreme Court has given to the patent venue statute. <u>See In re ZTE (USA) Inc.</u>, 890 F.3d at 1014; <u>Peerless Network, Inc.</u>, 2018 WL 1478047, at *2. "'[T]he Supreme Court has described the patent venue requirement as 'specific and unambiguous . . . not one of those vague principles

---

[5] While the <u>San Shoe</u> court indicates that the Federal Circuit affirmed the <u>Datascope</u> district court opinion "in relevant part," the Federal Circuit decision does not address venue. <u>See</u> <u>Datascope</u>, 776 F.2d 320. As noted above, the Federal Circuit has not ruled on this issue.

which, in the interest of some overriding policy, is to be given a "liberal" construction.'"
TrackThings LLC, 2022 WL 2829906, at *5 (quoting Schnell v. Peter Eckrich & Sons, Inc., 365
U.S. 260, 264 (1961)).

      The accrual date approach – as articulated in San Shoe – is not persuasive,
because it gives little weight to the text of the patent venue statute.  The San Shoe court
acknowledges that "[t]he most compelling argument Converse offers in support of the filing
standard is based on the text of § 1400(b) itself. . . , [which] . . . provides for venue where the
defendant 'has a regular and established place of business.'"  The court concedes that "this
argument has some obvious appeal," but ultimately rejects the statute's plain language:
"Converse has read too much into the text of the law.  Absent further support in the legislative
history, the court is unconvinced that Congress chose its words with the question we are faced
with in mind."  San Shoe, 649 F. Supp. at 345 (quoting 28 U.S.C. § 1400(b); emphasis in San
Shoe).  But the Federal Circuit has instructed that the patent venue determination must be
premised on the statutory language, see In re Cray, 871 F.3d at 1362, and an approach that
eschews reliance on Section 1400(b)'s text is not permissible.

      And while the San Shoe court argues that defendants who have availed
themselves of the benefits of doing business in a district "should not be able to retreat to [their]
home forum simply by closing up shop before [a] plaintiff has an opportunity to file a
complaint," San Shoe, 649 F. Supp. at 344, that concern does not apply here.  Unlike the
defendant in Welch – which closed its place of business in the district thirty-seven days before
suit was filed, Welch, 416 F.2d at 36 – or the defendant in San Shoe – which closed its place of
business in the district "more than a month" before suit was filed, San Shoe, 649 F. Supp. at 343
– Ditec moved its business out of New York more than two years before the Complaint was

filed.  (Lyon Decl. (Dkt. No. 26-1) ¶¶ 6-9)  There is thus no reason to believe that Ditec moved

its operations out of New York in reaction to a potential patent infringement suit.

      The Court concludes that patent venue is to be assessed at the time a complaint is

filed.  Accordingly, the relevant question here is whether Ditec had a "regular and established

place of business" in this District on September 8, 2022, when the Complaint was filed.[6]

### 2.    Whether Ditec Had a Regular and Established Place of <u>Business in this District on September 8, 2022</u>

      As discussed above, <u>In re Cray</u> sets out "three general requirements" relevant to

the "regular and established place of business" inquiry:  "(1) there must be a physical place in the

district; (2) it must be a regular and established place of business; and (3) it must be the place of

the defendant."  <u>In re Cray</u>, 871 F.3d at 1360.  "[A] 'regular and established place of business'

requires the regular, physical presence of an employee or other agent of the defendant

conducting the defendant's business at the alleged 'place of business.'"  <u>In re Google</u>, 949 F.3d at

1345.  "In the final analysis, the court must identify a physical place, of business, of the

defendant."  <u>In re Cray</u>, 871 F.3d at 1363-64.

      Here, the Complaint alleges that Ditec "maintains [a] place of business at 68 3rd

Street, #110, Brooklyn, New York, 11231."  (Cmplt. (Dkt. No. 1) ¶ 7)  But Brooklyn is in the

Eastern District of New York.  <u>See</u> 28 U.S.C. 112(c).  Plaintiff has therefore not alleged venue in

this District.  This defect – standing alone – is a sufficient reason to find that venue is improper.

<u>See</u> 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the

judicial district … where the defendant has committed acts of infringement and has a regular and

---

[6]  Because this Court adopts the filing date approach, it is not necessary to determine – for
purposes of venue – when Plaintiff's claim accrued.  Accordingly, this Court does not reach
Ditec's argument that the Complaint fails to state a claim for pre-issuance, provisional rights
under 35 U.S.C. § 154(d).  (Def. Br. (Dkt. No. 26) at 14)

established place of business."); cf. In re BigCommerce, Inc., 890 F.3d 978, 986 (Fed. Cir. 2018)

("[F]or purposes of determining venue under § 1400(b) in a state having multiple judicial

districts, a corporate defendant shall be considered to 'reside' only in the single judicial district

within that state where it maintains a principal place of business, or, failing that, the judicial

district in which its registered office is located.").  Surprisingly, the parties did not brief this

issue.  Accordingly, the Court considers below the arguments that have been made in the

briefing.

       Even if Brooklyn were located in the Southern District of New York, the record

indicates that Ditec ceased operations at its Brooklyn location in August 2020, more than two

years before the Complaint was filed.  According to the declaration of Ditec's principal, Ryley

Lyon, Ditec's lease for its Brooklyn location ended on August 21, 2020; "Ditec moved all of its

business operations and employees to Utah before that date"; and since that time, "Ditec [has]

maintained just one physical location, at 159 West Broadway, Suite 200, Salt Lake City, Utah

84101."  (Lyon Decl. (Dkt. No. 26-1) ¶¶ 6-8)  Lyon's declaration – together with Ditec's 2020

New York Franchise Tax Return (Dkt. No. 26-4 at 1) and Plaintiff's own allegation that

Defendant "changed its status to inactive with the New York[] Department of State Division of

Corporations on or about August 4, 2022" (Cmplt. (Dkt. No. 1) ¶ 8) – demonstrate that Ditec had

no place of business in the Southern District of New York when the Complaint was filed.

       Square One contends, however, that

> Ditec continued to use the New York address while conducting its business at
> least until August 31, 2022.  Ditec argues that it moved out of the district on or
> before its lease expired on August 21, 2020.  Ditec, however, continued to use the
> New York address even after the expiration of the lease.  Further, Ditec's Amazon
> storefront displayed the New York address at least until August 31, 2022.  Ditec
> also was registered with the New York's Department of State Division of
> Corporations as actively conducting business in the State of New York until about
> August 4, 2022, well after the '901 Patent was issued.  Only upon learning about a

potential litigation in this District [did] Ditec . . . change[] its status to inactive with the New York[] Department of State Division of Corporations on or about August 4, 2022.  Ditec's Chief Executive Officer, Mr. Lyon, also lists Brooklyn, New York as his address [on his LinkedIn profile page].

. . . .

Bills of Lading dated after the expiration of its lease [also] list[] [Ditec's] New York address . . . .  [T]he Bill[s] of Lading list[] the Port of Arrival as . . . ["]New York/Newark Area, Newark, New Jersey["] and ["]Consignee Declared["] [as Ditec's] Brooklyn address. . . .  Moreover, the second page of the Bill[s] of Lading list[] the correct New York address and Ditec's corporate name.

(Pltf. Opp. (Dkt. No. 28) at 15-17 (citations omitted))

Square One's arguments are not persuasive.  As an initial matter, Ditec's alleged ties with Brooklyn are irrelevant, because Brooklyn is not located in the Southern District of New York.  And even if Brooklyn were located in this District, the evidence cited by Plaintiff does not satisfy the requirements of Section 1400(b).

As to Ditec's Amazon storefront address and status as "active" on file with the New York Department of State, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient [to create venue]; the defendant must actually engage in business from that location."  In re Cray, 871 F.3d at 1364.  Moreover, according to the Complaint, "Defendant . . . changed its status to inactive with the New York[] Department of State Division of Corporations on or about August 4, 2022" (Cmplt. (Dkt. No. 1) ¶ 8), before the Complaint was filed.

As to Lyon's alleged residence in Brooklyn, a location establishing patent venue

must be a place of the defendant, not solely a place of the defendant's employee. Employees change jobs.  Thus, the defendant must establish or ratify the place of business.  It is not enough that the employee does so on his or her own.

In re Cray, 871 F.3d at 1363 (emphasis in original).

Here, Plaintiff has not alleged that Ditec "paid for [Lyon's] . . . living expenses or that [Ditec] . . . hold[s] itself out as doing business from any employee's New York residence." NetSoc, 2019 WL 4857340, at *3.  Nor has Plaintiff alleged that Ditec used Lyon's home "to store its 'literature, documents and products' [or] . . . like [a] distribution center[], stor[e] inventory that the employees then directly took to . . . clients." In re Cray, 871 F.3d at 1362 (quoting In re Cordis Corp., 769 F.2d 733, 735 (Fed. Cir. 1985)); compare RegenLab USA, LLC v. Estar Techs. Ltd., 335 F. Supp. 3d 526, 549-52 (S.D.N.Y. 2018) (holding that sales employees' residence in this District established the employer's venue when employer's job postings "list[ed] requirements that necessitate[d] working within [a particular] sales territory," and the employer provided "sales kit[s]" that sales employees "stored in their home office[s] to conduct demonstrations").  In sum, Plaintiff has not demonstrated that Lyon's residence amounts to Ditec's place of business.

As to the bills of lading, they reflect shipments that arrived on June 27, 2020, July 10, 2020, August 19, 2020, and February 15, 2021.  (Bills of Lading (Dkt. No. 1-2))  They therefore shed no light on where Ditec was conducting business on September 8, 2022.  In any event, there is no indication that Ditec or someone with personal knowledge of Ditec's place of business prepared the bills of lading, and Lyon avers in his declaration that (1) "[n]one of the[] shipments [connected to the bills of lading] were delivered to Ditec's former New York address"; and (2) "[a]ny Bill of Lading listing the New York address as consignee after July 2020 was merely an error by the supplier or shipping agent that prepared the document."  (Lyon

Decl. (Dkt. No. 26-1) ¶¶ 16, 18)  On the current record, there is no basis to reject Lyon's representations about the bills of lading.[7]

For all these reasons, Square One has not made a <u>prima facie</u> showing that Ditec had a "regular and established place of business," 28 U.S.C. § 1400(b), in this District as of September 8, 2022, when the Complaint was filed.  Accordingly, venue in this District is not proper.

### C.    <u>Whether Plaintiff Is Entitled to Venue-Related Discovery</u>

Square One requests leave to conduct venue-related discovery "limited to the issue of whether Ditec has a physical place of business in the district and/or had employees present in the district after August 21, 2020."  (Pltf. Opp. (Dkt. No. 28) at 8)  Ditec opposes Square One's request.  (Def. Reply (Dkt. No. 27) at 11-12).

As discussed above, the Complaint does not contain "fact-specific allegations or evidence that could support a finding that venue is proper" in this District.  <u>NetSoc</u>, 2019 WL 4857340, at *4.  Indeed, Square One has "not allege[d] facts supporting any <u>Cray</u> prong." <u>Berall</u>, 2022 WL 2666070, at *5.  Given these circumstances, Square One's request for venue-related discovery is denied.

### D.    <u>Whether Dismissal or Transfer Is Appropriate</u>

28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

---

[7]  To the extent that Square One argues that Ditec has a place of business in Soquel, California (Pltf. Opp. (Dkt. No. 28) at 10), that argument is misguided.  Ditec's website's terms of service refer to Soquel, California only in stating that California law applies to any issue arising out of the website services.  (Ditec d/b/a MYNT3D Website Terms of Service (Dkt. No. 28-2) § 18 ("These Terms of Service and any separate agreements whereby we provide you Services shall be governed by and construed in accordance with the laws of 4041 Soquel Dr., Soquel California US 95073.")) The website terms of service do not represent that Ditec has a place of business in Soquel, California.

justice, transfer such case to any district or division in which it could have been brought." 28

U.S.C. § 1406(a). "[T]he decision whether to transfer or dismiss is evaluated under 28 U.S.C.

§ 1406(a) and 'lies within the sound discretion of the district court.'" Pisani v. Diener, 2009 WL

749893, at *8 (E.D.N.Y. Mar. 17, 2009) (quoting Minnette v. Time Warner, 997 F.2d 1023, 1026

(2d Cir. 1993)); see also NetSoc, 2019 WL 4857340, at *5 (transferring a patent infringement

case to the Northern District of California under Section 1406(a)); Berall, 2022 WL 2666070, at

*6 (transferring a patent infringement case to the Eastern District of North Carolina).

     "Dismissal may be appropriate when the case is a 'sure loser on the merits,' so as

not to 'waste the time of another court by transferring it.'" TrackThings, 2022 WL 2829906, at

*13 (quoting Moreno-Bravo v. Gonzalez, 463 F.3d 253, 263 (2d Cir. 2006)).  At this stage of the

proceedings, this Court has no view as to the merits of this case.  Accordingly, dismissal is not

appropriate.  See id.

     Square One has requested that, if this Court concludes that venue in this District is

not proper, the case be transferred to the District of Utah.  (Pltf. Opp. (Dkt. No. 28) at 19)  Ditec

has not opposed Plaintiff's request.  (Def. Reply Br. (Dkt. No. 27) at 4, 12)  Venue in the District

of Utah appears proper because of Ditec's "regular and established place of business" in Salt

Lake City.  28 U.S.C. § 1400(b).  Accordingly, this case will be transferred to the District of

Utah.

## II.   <u>APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS</u>

Ditec has moved for an award of attorneys' fees and costs (Mot. (Dkt. No. 25) at

2), asserting that it

> informed Square One that venue is not proper in New York before Square One
> filed its Complaint in this case.  In fact, counsel for Ditec provided Square One
> with a detailed written explanation of the relevant facts and the legal basis as to
> why venue was not proper in New York at that time.  Yet, Square One was
> undeterred and proceeded with filing its Complaint in New York.

(Def. Br. (Dkt. No. 26) at 6)

In support of its application, Ditec has submitted email correspondence between

counsel in which Ditec informs Plaintiff's counsel that (1) "[b]ecause Ditec is incorporated in

Wyoming, it does not 'reside' in New York for the purpose of patent venue"; (2) "Ditec does not

have any physical presence in New York.  It has no offices or employees there.  It does,

however, have a physical presence in Utah."; and (3) "Ditec does not have any presence in NY.

They are not incorporated in NY and they do not have any brick and mortar location there.

Venue is not proper in NY.  Again, if your client chooses to file suit in NY, and if we are forced

to file a motion to transfer, we will seek our fees and costs."  (July 14, 2022 Tobin email (Dkt.

No. 26-9) at 4; Aug. 2, 2022 Tobin email (Dkt. No. 26-9) at 2)

Ditec contends that "[i]t has been clear to Square One since before it filed suit that

venue is not proper in New York," that "Square One unnecessarily and improperly multiplied the

proceedings by filing the instant lawsuit in a court where it knew venue was not proper," and that

"[b]y filing in New York, Square One unnecessarily and improperly subjected Ditec to

significant fees and costs that it should not have [had] to incur."  (Def. Br. (Dkt. No. 26) at 15)

A.     **Applicable Law**

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award

reasonable attorney fees to the prevailing party [in a patent dispute]."

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014).

"In making this determination, 'there is no precise rule or formula' to be

followed, 'but instead equitable discretion should be exercised,'" KX Techs., LLC v. Zuma

Water Filters, Inc., 2018 WL 3302589, at *2 (D. Conn. July 5, 2018) (quoting Octane Fitness,

572 U.S. at 554).  Relevant factors include "'frivolousness, motivation, objective

unreasonableness (both in the factual and legal components of the case) and the need in

particular circumstances to advance considerations of compensation and deterrence.'" Octane

Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

To be a "prevailing party" within the meaning of Section 285, a party must obtain

a favorable "final court decision" that "change[s] the legal relationship between the parties."

O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC, 955 F.3d 990, 993 (Fed. Cir. 2020).

This Court also has – independent of 35 U.S.C. § 285 – inherent power to grant an

award of attorneys' fees and costs.  This authority may be exercised only in "'the most

extraordinary of instances,'" however.  Castillo Grand, LLC v. Sheraton Operating Corp., 719

F.3d 120, 123 (2d Cir. 2013) (quoting Fleischer v. Paramount Pictures Corp., 329 F.2d 424, 426

(2d Cir. 1964), and citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240,

258-59 (1975)).[8]  In the Second Circuit, such an award may be proper where there has been "willful disobedience of a court order, acts taken in bad faith, vexatiously, wantonly, or for oppressive reasons, or suits where one litigant's expenses benefit a larger class."  Id. at 124 (internal quotation marks and citations omitted).  "In order to award bad faith fees, the district court must find that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay."  Kerin v. U.S. Postal Serv., 218 F.3d 185, 190 (2d Cir. 2000) (footnote omitted).

 **B.** **Analysis**

  Here, Ditec has not demonstrated that this is an "exceptional case" warranting an award of attorneys' fees under Section 285, nor has it demonstrated that this is an "extraordinary" case warranting an award of attorneys' fees under the Court's inherent powers.

  As to Section 285, Ditec is not a "prevailing party" within the meaning of that statute, because it has merely prevailed on a transfer motion, and has not obtained a "final decision" that "change[s] the legal relationship between the parties."  O.F. Mossberg, 955 F.3d at 993.  In any event, this is not an "exceptional case" under Section 285.  Given (1) the intra-District split regarding the time frame for assessing venue, compare TrackThings, 2022 WL 2829906, at *5, with San Shoe Trading, 649 F. Supp. at 344-45; (2) conflicting law at the circuit level, see In re Google LLC, 949 F.3d at 1340 n.1; and (3) the failure of the Federal Circuit to resolve this issue, this Court cannot find that Plaintiff's decision to sue in this District was "frivolous[]" or "objective[ly] unreasonable[]."  Octane Fitness, 572 U.S. at 554 n.6 (quotation omitted); see also Mallinckrodt IP v. B. Braun Med. Inc., No. CV 17-365-LPS, 2017 WL

---

[8] "Because a district court's inherent power to impose sanctions in the form of attorneys' fees is not a substantive patent question, . . . the law of the regional circuit [applies]."  Realtime Adaptive Streaming LLC v. Netflix, Inc., 41 F.4th 1372, 1377 (Fed. Cir. 2022) (citing AntiCancer, Inc. v. Pfizer, Inc., 769 F.3d 1323, 1328 (Fed. Cir. 2014)).

6383610, at *1 (D. Del. Dec. 14, 2017) ("Plaintiffs' filing and maintenance of this suit in this District . . . is neither unreasonable nor sanctionable. This is particularly true given recent developments in connection with venue law, see TC Heartland, 137 S.Ct. 1514, 1516 (2017), and uncertainty as to how to apply the patent venue statute.").

For substantially the same reasons, Ditec has not demonstrated that Plaintiff filed its action in this District "for improper purposes such as harassment or delay." Kerin, 218 F.3d at 190.

Accordingly, Ditec is not entitled to an award of attorneys' fees and costs under either 35 U.S.C. § 285 or this Court's inherent power.

## CONCLUSION

For the reasons stated above, Ditec's motion to transfer is granted; Square One's motion for venue-related discovery is denied; and Ditec's motion for an award of attorneys' fees and costs is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 25), to close this case, and to transfer this action to the Clerk of the U.S. District Court for the District of Utah.

Dated: New York, New York
      August 16, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge